## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **RILEY CLEVELAND WILLIAMS, JR.** | |
| **PLAINTIFF,** | |
| **vs.** | **Case No.: 1:26-cv-00277** |
| **NEWREZ LLC D/B/A SHELLPOINT MORTGAGE SERVICING,** | **JURY TRIAL DEMANDED** |
| **DEFENDANT.** | |

## COMPLAINT

**COMES NOW** Riley Cleveland Williams, Jr. and, as his Complaint against Defendant NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), states as follows:

### JURISDICTION AND VENUE

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 15 U.S.C. § 1681p and 12 U.S.C. § 1367.

Venue is proper here pursuant to 28 U.S.C. § 1391, because the events giving rise to Plaintiff's cause of action occurred in this District.

### PRELIMINARY STATEMENT

This action arises from the wrongful management of Plaintiff's home mortgage loan. Specifically, Defendant Shellpoint improperly increased the payment amount demanded during Mr. Williams Chapter 13 bankruptcy, demanding amounts not owed. It also failed to recognize and properly apply payments made during bankruptcy. After the bankruptcy was fully paid and discharged, Shellpoint continued to demand amounts not owed and is falsely holding Plaintiff in default, and placing his home in danger of wrongful foreclosure.

Plaintiff has submitted two notices of servicing error pursuant to the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2605 ("RESPA"). Shellpoint failed to conduct any reasonable investigation of the errors described in the notices, failed to properly respond to the notices, and failed to make necessary corrections.

Plaintiff asserts claims against Shellpoint for violations of RESPA. Plaintiff seeks statutory and actual damages, including damages for mental anguish and emotional distress, and punitive damages; plus attorneys' fees and costs.

## PARTIES

1. The Plaintiff is a natural person and resident of Mobile County, Alabama. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

2. Defendant NewRez, LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint") is a corporation formed outside of the State of Alabama, with its principal place of business in the State of Pennsylvania. At all relevant times, Shellpoint was the servicer of the subject loan.

3. Shellpoint is a "mortgage servicer" as defined by 12 U.S.C. § 2605(i)(2).

## FACTUAL ALLEGATIONS

4. Plaintiff is an adult resident of Mobile County, Alabama. He resides with his disabled wife in their home in Mobile.

5. On November 3, 2017, Mr. Williams obtained a mortgage loan with Southwest Funding, LP in the amount of $117,419. The loan is secured by his home at 4 Oklahoma Drive, Mobile, Alabama. This is a fixed-rate mortgage loan, with an annual interest rate of 5.1% and monthly principal and interest payments of $639.33.

6. Upon information and belief, servicing of the mortgage was transferred to Shellpoint in 2020.

7.    Due to circumstances beyond his control, Mr. Williams suffered a reduction in income during COVID-19 and fell behind on his bills.   He entered into a mortgage modification agreement with Shellpoint on July 13, 2020, and made all the required payments under the modified mortgage.

8.    Mr. Williams filed for Chapter 13 bankruptcy protection on November 25, 2020. His mortgage payments were current.  He continued to make the required mortgage payments throughout the bankruptcy.  His bankruptcy was fully paid and discharged February 3, 2026.

9.    Throughout the bankruptcy, Shellpoint regularly failed to recognize Mr. Williams' payments and consistently claimed Mr. Williams owed past due payments which were in fact made.

10.    Shellpoint also steadily increased the payments it demanded during the bankruptcy. At the time the bankruptcy was filed, Mr. Williams' regular monthly payment amount was $875.13, including an escrow payment of $162.96.  By the time the bankruptcy was discharged, Shellpoint had increased the monthly payment to $1,308.48, including an escrow payment of $669.16.

11.    Part of the payment increase was the result of a drastic increase in Mr. Williams' homeowners premium which occurred in August 2024, when his insurance company (State Farm) charged for separate wind and hazard policies.  This caused his premium to nearly double, and his mortgage payment increased as a result.   In March 2025, Mr. Williams switched insurance companies and his premium decreased from a total of $5,670 to $2,460.   However, while Shellpoint recognized the new policy, it failed to reduce the escrow payment.

12.    By letter dated March 17, 2025, Mr. Williams sent a dispute letter to Shellpoint. The letter described Shellpoint's failure to acknowledge the payments made.  Mr. Williams also

requested that his escrow payments be recalculated due to the reduction in insurance premiums. (A copy of the March 17, 2025 letter is attached hereto as Exhibit A).

13. On March 25, 2025, Shellpoint performed an escrow analysis. However, rather than account for the decrease in insurance premiums, Shellpoint actually increased the monthly payment amount from $1,283.07 to $1,308.48.

14. Shellpoint responded to Mr. Williams' March 17th letter on April 14, 2025. In that letter, Shellpoint explained that it had recalculated the escrow payment, but it failed to explain why the payment increased despite the drastic decrease in the insurance premium. Shellpoint's response also failed to address Mr. Williams' claim that it had miscalculated the arrearage and failed to recognize his payments.

15. Shellpoint continued to accept monthly mortgage payments from Mr. Williams via ACH from his bank account. However, it continued to allege he was behind on his monthly payments.

16. Mr. Williams' bankruptcy was discharged on February 3, 2026, after the successful completion of his bankruptcy plan.

17. On February 20, 2026, Shellpoint sent Mr. Williams a Notice of Default, claiming a $7,223.50 amount to cure the default.

18. On March 11, 2026, Mr. Williams sent another dispute letter to Shellpoint. The letter described Shellpoint's continued failure to acknowledge the payments made by Plaintiff for the months they allege no payment was made and attached a copy of his bank records, once again, showing the ACH transaction each month. The letter requested that Shellpoint identify specifically which monthly payment is claimed to have been missed. The letter also explained that Shellpoint had failed to properly calculate the escrow requirement and improperly increased the escrow

4

payment despite the fact that the insurance costs decreased.  (A copy of the March 11, 2026 letter is attached hereto as Exhibit B).

19.     Shellpoint responded to the March 11th letter by letter dated April 23, 2026. In that letter, Shellpoint addressed one payment date it claimed was delinquent, when in fact, it was claiming a default on the loan for several missed payments. It failed to address any other missed payments it was claiming, failed to acknowledge its error, and failed to state one way or another, whether an error occurred.  The letter also completely failed to address Mr. Williams' assertion that it had miscalculated the escrow.

20.     The March 17th and March 11th letters each constitute a Notice of Servicing Error ("NOE") within the meaning of 12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.  Those letters were directed to the address designated by Shellpoint for receipt of notices of error.

21.     Plaintiff suffered actual damages and injury-in-fact as a result of Defendant's statutory violations. The damages suffered include, but are not limited to, the following: the fees and other charges incurred as a result of Defendant's false arrearage claims and improper escrow charges; mental and emotional pain, distress, anguish, humiliation, frustration and anxiety stemming from a real and justifiable fear of losing his family home.

22.     The harm suffered by the Plaintiff as a result of Defendant's wrongful acts and omissions bears a close relationship with the types of harm for which the law has traditionally allowed redress under common law claims for breach of mortgage, accounting, fraud, suppression, defamation, slander, invasion of privacy, wanton collections, negligence and willfulness.

## COUNT I
### (RESPA VIOLATIONS)

23.     The allegations stated in Paragraphs 1 through 22 above paragraphs are incorporated as if fully asserted herein.

24.    Section 6(d) of the Real Estate Settlement Procedures Act ("RESPA."), 12 U.S.C. § 2605(e), and its implementing regulations grant borrowers the right to submit a "Notice of Servicing Error" ("NOE"), identifying perceived errors committed by the servicer.   12 U.S.C. § 2605(e) and 12 C.F.R. § 1024.35.

25.    A NOE must sufficiently identify the borrower, the account and the perceived servicing error.  Id.

26.    RESPA requires specific actions be taken by the servicer upon receipt of an NOE, including a reasonable investigation of the error. The servicer is also required to make all "appropriate corrections" to the account which a reasonable investigation would reveal. This would include the correction of all servicing errors, even those not described in the NOE.  RESPA also requires the servicer to suspend all derogatory credit reporting while it investigates the errors set out in the NOE.

27.    A servicer violates RESPA by failing to comply with regulations promulgated by the Bureau of Consumer Financial Protection, including the regulations concerning the servicer's duties upon receipt of an NOE.  12 U.S.C. § 2605(k).

28.    Plaintiff's mortgage is a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602(1).

29.    Shellpoint is a "servicer" with respect to Plaintiff's loan as that term is defined in 12 U.S.C. § 2605(i)(2).

30.    Plaintiff's March 17th and March 11th letters each constitute a NOE within the meaning of 12 U.S.C. § 2605(e).  Shellpoint was required to reasonably investigate the errors identified in the letter, make all appropriate corrections, and provide the information and documents requested.

31.     Shellpoint failed to conduct any reasonable investigation, and it failed to make any appropriate corrections to the account.

32.     Plaintiff has suffered actual damages as a proximate result of Defendant's failure to comply with Section 2605(e) and its implementing regulations, including mental anguish, emotional distress, physical sickness and other personal injuries.

33.     Defendant has engaged in a pattern and practice of acts and omissions which violate Section 2605(e), including its repeated violations with respect to Plaintiff, sufficient to allow recovery of statutory damages under Section 2605(f).  This pattern and practice also includes the failure to conduct reasonable and adequate investigations of servicing errors described in NOEs, and the failure to make corrections which any reasonable investigation would reveal are necessary and appropriate with respect to other borrowers.

**WHEREFORE**, Plaintiff requests that this Court enter a judgment against Shellpoint for each violation of RESPA, awarding the following relief:

    a.  Statutory and actual damages as provided in 12 U.S.C. § 2605(f), including damages for mental anguish, emotional distress, physical sickness and other personal injuries;

    b.  Reasonable attorney's fees, and costs expended in this proceeding; and

    c.  Such other and further relief as the Court may deem just and proper.

**TRIAL BY JURY IS DEMANDED AS TO EVERY CLAIM ASSERTED HEREIN.**

**RESPECTFULLY** submitted on this the 24th day of July, 2026.

KENNETH J. RIEMER (RIEMK8712)
RIEMER LAW, LLC
*Attorney for Plaintiff*
1610 Government Street
Mobile, AL  36604
Telephone: (251) 432-9212
E-mail: kjr@riemer-law.com

**PLEASE SERVE DEFENDANT BY CERTIFIED MAIL AS FOLLOWS:**

**NewRez, LLC d/b/a Shellpoint Mortgage Servicing**
c/o Corporation Service Company, Inc.
641 South Lawrence Street
Montgomery, AL 36104

8